# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

HOWELL W. WOLTZ,

           Plaintiff,

v.                                 CIVIL ACTION NO.  5:11-cv-00058

JEREMY NASH, et al.,

           Defendants.

## MEMORANDUM OPINION AND ORDER

On January 25, 2011, Plaintiff filed his Complaint (Document 1) claiming entitlement to relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-97, (1971). By Standing Order (Document 2) entered on January 31, 2010, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636. On August 25, 2011, Jeffery T. Mauzy filed a notice of appearance on Plaintiff's behalf thereby withdrawing the reference to Magistrate Judge VanDervort. (Document 26). In addition, Thomas A. Rist subsequently filed a notice of appearance on Plaintiff's behalf. (Document 30).

Pending before the Court are *Plaintiff's Motion for Default to be Entered by Clerk Pursuant to Rule 55(a)* (Document 14); *Plaintiff's Motion for Entry of Default Pursuant to Rule 55(a) Against Defendants in their Official Capacities* (Document 19); and *Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment* (Document 20).

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiff, a federal prisoner incarcerated at the Federal Correctional Institution in Beaver, West Virginia ("FCI Beckley"), filed a *pro se Bivens* action and Request for Emergency Temporary Restraining Order and Injunctive Relief against Jeremy Nash, Captain; Brigette Seafus, Camp Administrator/Executive Assistant; and Joel Ziegler, Warden, FCI Beckley.[1] All Defendants are employees of the Federal Bureau of Prisons ("BOP"). Plaintiff alleges that Defendants "defied Bureau of Prisons Regulations, 28 C.F.R § 541.12 (Rights of Prisoners) and the First, Fifth, Sixth, and Eighth Amendments to the United States Constitution."[2] (Compl. ¶ 2.) First, Plaintiff alleges Defendants violated his right of access to the law library, copy machines, commissary items and supplies necessary for attending to legal work in violation of the First and Sixth Amendments and BOP policy (Compl. ¶¶ 3A-C.) Second, Plaintiff alleges Defendants suspended religious services and activities generally, and particularly with respect to his Native American religion, in violation of the First Amendment and BOP policy. (Compl. ¶ 3D.) Next, Plaintiff alleges Defendants restricted his and other inmates' movement during an unwarranted "lockdown" except for work and meals, thereby denying them access to recreation, the law and leisure libraries, hobbies and interests in violation of the Eighth Amendment and BOP policy. (Compl. ¶¶ 3E-F.). Additionally, Plaintiff claims Defendants illegally tampered with incoming and outgoing legal mail in violation of the First and Sixth Amendments. (Compl. ¶ 3G.) Lastly, Plaintiff alleges Defendants restricted his visitation and communication rights by limiting him to twenty stamps and two copy cards per week from the commissary. (Compl. ¶ 3H.)

---

[1] The Court will consider the fact that Plaintiff was acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

[2] "Inmate Rights and Responsibilities" is attached as Complaint Exhibit C.

2

Plaintiff alleges Defendant Nash "issued the illegal mass punishment sanctions memo attached as Exhibit A, which on information and belief is unrelated to 'contraband' and part of a larger scheme to increase camp security level to a 'low' which will cause more union jobs, and employment opportunities . . . now including a sleep deprivation program." (Comp. ¶ 7.) Complaint Exhibit A is a memorandum Defendant Nash issued on January 12, 2011, which laid out a three phase progressive restriction plan to address an "increased introduction of contraband, at the SCP . . . [.]"[3] (Compl. Ex. A.) Plaintiff alleges that when he advised Defendant Seafus that his constitutional and regulatory rights had been violated on January 21, 2011, she acknowledged her participation and support of the violations. (Compl. ¶¶ 10-11.) Plaintiff contends Defendant Seafus encouraged him to file suit when she said "so sue me" in response to his requests for her to withdraw from the "illegal actions." (*Id*. ¶ 12.) Plaintiff alleges that Defendant Ziegler "personally participated in, and approved the decision to violate the constitutional rights of his captives for no known infraction and without due process in contravention of 28 C.F.R. § 541.12 and Bureau of Prisons published policy." (*Id*. ¶ 15.) Plaintiff states that "Defendant Zeigler was further advised by letter of the possibility that his conduct was illegal by former federal magistrate judge, Arthur P. Strickland, on January 18, 2011, yet pressed on with the illegal sanctions." (*Id*. ¶ 16.) Apparently Mr. Strickland represents Plaintiff in some capacity. However, Mr. Strickland has yet to file a notice of appearance in the instant case. Plaintiff alleges that the Defendants intentionally denied him access to the administrative remedy process by refusing to provide him administrative remedy forms and

---

[3] Phase I restrictions proposed the closing of the recreation yard at 7:00 p.m. and limiting commissary purchases to hygiene items only, which was set to commence on January 13, 2011, and continue through January 26, 2011. (Compl. Ex. A). Phase II restrictions added no recreation at night or on weekends, microwave removal and televisions turned off at 6:00 p.m. in addition to all of the Phase I restrictions, and was set to begin on January 27, 2011, and continue through February 9, 2011. (*Id*.) Plaintiff appears to have written on the Memorandum that Phase II "started on Jan. 19, 2011. Compound closes at 4 pm daily. No access to law library." (*Id*.) Phase III restrictions proposed housing unit restrictions, no phones, television or email and visitation restrictions in addition to all of Phase I and II restrictions, which was set to begin on February 10, 2011, and continue indefinitely. (*Id*.)

continued an "illegal mail tampering scheme" by opening and copying his legal mail in violation of Bureau of Prisons regulations. (*Id*. ¶¶ 19-22.) Plaintiff alleges that he has suffered and will continue to suffer harm and retaliation through Defendants "continuing criminal mail tampering and subornation (sic) of this violation of law and their own policy." (*Id*. ¶ 23.)

Plaintiff seeks a Temporary Restraining Order requiring Defendants "to cease and desist these illegal sanctions in violation of 1) First Amendment rights (sic) to practice religion, communication, access to public and free speech among others; 2) Sixth Amendment violations of access to court and commissary, copies, law, and means; 3) Eighth Amendment right to daily recreation; 4) First and Sixth Amendment right (sic) to private communications with court, counsel, and 'special mail' such as from the Department of Justice."[4] (*Id*. ¶ 29.) Plaintiff also demands monetary relief "of at least $10 million." (*Id*. ¶ 34.)

## II.  LEGAL STANDARD

The Court is required to screen all cases where "a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (a). In screening the complaint, the Court shall dismiss any portion or all of the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A (b)(1). The Court must also dismiss any portion or all of the complaint if the prisoner "seeks monetary relief from a defendant who is immune from such relief." *Id*. at § 1915A (b)(2).

### A. Motion to Dismiss

Under Rule 8(a)(2), a plaintiff must provide a "short and plain statement of the claim showing . . . entitle[ment] to relief," and is not required to plead specific facts in the complaint. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The statement

---

[4] Although the Court does not reach the merits of Plaintiff's claim for injunctive relief, Plaintiff agrees that this issue is moot. (Document 25 at 25).

4

need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). A defendant may challenge the complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted . . .." Fed. R. Civ. P. 12(b)(6).

In reviewing a motion to dismiss under Rule12 (b)(6), the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . . [.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

**B.  Motion for Summary Judgment**

The well-established standard in consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001).

5

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Id.* The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). The nonmoving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

### III.  DISCUSSION

**A. Plaintiff's Motions for Entry of Default**

As a preliminary matter, the Court addresses Plaintiff's motions for entry of default (Documents 14 and 19). On April 26, 2011, Plaintiff filed a motion requesting the clerk to enter default against Defendants Nash, Seafus and Ziebler, wherein Plaintiff submits he properly served Defendants under the Federal Rules of Civil Procedure. (Document 14 ¶ 2.) Plaintiff certifies that Defendants were sued both in their individual and official capacities. (*Id.* ¶ 1.) Plaintiff declares "[s]ummonses were served on defendants on February 11, 2011, triggering the

60-day period for response under Rule 12(a) (2) & (3)." (*Id*. at ¶ 3.) He contends that Defendants defaulted on April 12, 2011, by failing to respond to his Complaint. (*Id*. at ¶ 4.)

In order to be entitled to an entry of default, the defaulting party must be properly served in the manner required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 55. Plaintiff sues Defendants in their individual and official capacities as employees of the United States. To serve an officer or employee sued in their individual capacity for actions performed in connection with duties preformed on the United States' behalf, a party "must serve the *United States* and also serve the officer or employee under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4 (i)(3) (emphasis added). After review of the record, it is clear that Plaintiff served summonses and the complaint on Defendants Nash and Seafus on February 8, 2011, and Defendant Ziegler on February 11, 2011. (Documents 7, 8 and 9). Nevertheless, Plaintiff did not initially perfect service on the named Defendants because he did not properly serve the United States. Rule 4(i)(1) provides how summonses and complaints must be served upon the United States as follows:

> **(1)** *United States.* To serve the United States, a party must:
>
> **(A)(i)** deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought--or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk--or
>
> **(ii)** send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;
>
> **(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and
>
> **(C)** if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

As of April 26, 2011, the record indicates that Plaintiff had not sent a copy of the summonses to the United States Attorney for the Southern District of West Virginia or the Attorney General of the United States in Washington, D.C., as mandated by Rule 4(i)(1). Thus, Plaintiff had failed to perfect service on Defendants as of the filing of his first motion for entry of default. Accordingly, Plaintiff's Motion for Default to be Entered by Clerk Pursuant to Rule 55(a) (Document 14) should be denied.

On June 21, 2011, Plaintiff filed his second motion for entry of default. (Document 19). In support of his motion, Plaintiff contends that he properly served Defendants in their official and individual capacities on January 31, 2011. (Document 19 at ¶¶ 1-2.) Plaintiff argues that service upon the United States was proper when the clerk issued summonses to Defendants on that date. (*Id.*) However, that is not the case. As the Court previously discussed, Plaintiff must properly serve the United States pursuant to Rule 4 (i)(1) to perfect service on Defendants. Plaintiff did not complete service until May 2, 2011, when he mailed a copy of his Complaint and Summonses to the United States Attorney for the Southern District of West Virginia and to the Attorney General of the United States in Washington, D.C., as mandated by Rule 4(i)(1). (Document 16). As a result, Defendants still had time to file a responsive pleading at the time Plaintiff filed his second motion for default. Accordingly, Plaintiff's Motion for Entry of Default Pursuant to Rule 55(a) against Defendants in their Official Capacities (Document 19) should also be denied.[5]

---

[5] The Court also considers *Plaintiff's Motion for Reconsideration of Order Filed April 29, 2011* (Document 18) filed on May 16, 2011. Plaintiff essentially argues in his motion for reconsideration that he properly served Defendants thereby making them in default for failure to file a responsive pleading within sixty (60) days. (Document 18 at ¶¶ 1-8.) In light of the Court's ruling that service was not completed until May 2, 2011, *Plaintiff's Motion for Reconsideration of Order Filed April 29, 2011* (Document 18) of Magistrate Judge VanDervort's Order (Document 15) is hereby denied.

Before the Court considers Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, the Court will address the arguments made by Plaintiff for entry of default in his response to Defendants' motion. Plaintiff continues to argue that service was properly made on Defendants on January 31, 2011. Specifically, Plaintiff states "Defendants have failed to file a responsible pleading, and are in default, rendering their time-barred Motion to Dismiss, or in the Alternative, Motion for Summary Judgment . . . moot." (Document 25 ¶ 1.) Plaintiff characterizes Magistrate Judge VanDervort's order (Document 12) as unwarranted. (*Id.* ¶ 15.) On April 1, 2011, Magistrate Judge VanDervort ordered that the "Defendants shall file their Answer or otherwise respond to Plaintiff's Complaint within sixty days after Plaintiff has *accomplished* service of process as Federal Rule of Civil Procedure 4(i) requires." (Document 12 at 3) (emphasis added). As the Court previously ruled, the Defendants were not compelled to respond until the United States was properly served on May 2, 2011. Thus, Plaintiff's argument is without merit.

Next, Plaintiff argues that Defendants are in default because he properly served them under the prison mailbox rule on May 2, 2011, which means Defendants' pleadings were "due no later than Thursday (sic), July 1, 2011." (Document 25 ¶¶ 21-22.) Thus, Plaintiff contends Defendants' responsive pleading, filed on July 5, 2011, fell outside of the allowable time period of sixty days. (*Id.*) Plaintiff miscalculated the time Defendant had to file a responsive pleading. Plaintiff completed service by mailing the Complaint and Summonses to the last known address of the United States Attorney and the Attorney General of the United States on May 2, 2011. Fed. R. Civ. P. 5(b)(2)(C). However, pursuant to Rule 6(d), "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)." Here, service was

9

completed by mail pursuant to Rule 5(b)(2)(C). (*See* Documents 7, 8, 9 and 16). Therefore, Defendants had sixty-three (63) days to respond to Plaintiff's proper service, which, when excluding the day of the triggering event, was July 4, 2011, the legal holiday of Independence Day. Fed. R. Civ. P. 6(a)(6)(A). As a result, Defendants' response was not due until July 5, 2011, because the filing deadline was extended until the end of the next day that was not a legal holiday. *Id*. Consequently, Defendants' responsive pleading was timely filed on July 5, 2011. Therefore, the Court finds Plaintiff's responsive arguments, for entry of default, to be entirely without merit.

**B. Motion to Dismiss, or in the Alternative Motion for Summary Judgment**

On July 5, 2011, Defendants filed their Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Document 20). In support, Defendants assert the following grounds: (1) Plaintiff failed to exhaust administrative remedies; (2) Plaintiff failed to state a constitutional claim; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff failed to allege facts sufficient to warrant injunctive relief. On July 20, 2011, Plaintiff filed his response to Defendants' motion. (Document 25).

*Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (a) (2006), requires inmates to properly exhaust available administrative remedies prior to filing civil actions challenging the conditions of their confinement.[6] *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This requirement is mandatory, and is applicable to *Bivens* claims. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th

---

[6] The exhaustion provision of the PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (a).

Cir. 2005); *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007); *Booth v. Churner, 206 F.3d 289, 291* (3d Cir. 2000). Prisoners are only required to exhaust available administrative remedies and "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore, 517 F.3d at 725.* (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).

In order to bring an action in federal court "a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore*, 517 F.3d at 725. (citing *Woodford*, 548 U.S. at 87). "[T]here is no futility exception to the PLRA's exhaustion requirement." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

The exhaustion of administrative remedies is an affirmative defense, rather than a jurisdictional requirement, and thus, inmates need not plead exhaustion, nor do they bear the burden of proving it. *See Jones v. Bock*, 549 U.S. 199, 212 (2007); *see also Anderson*, 407 F.3d at 725. The Supreme Court rejected the argument that the failure to exhaust is somehow subsumed in the PLRA's enumeration of grounds authorizing early dismissal of a case. However, the Fourth Circuit has stated, "even if it is not apparent from the pleadings that there are available administrative remedies that the prisoner failed to exhaust, a complaint may be dismissed on exhaustion grounds so long as the inmate is first given an opportunity to address the issue." *Moore, 517 F.3d at 725* (citing *Anderson,* 407 F.3d at 681 for the proposition that a district court may raise affirmative defense of exhaustion *sua sponte* under the PLRA so long as

plaintiff is given an opportunity to respond). Here, Plaintiff was given an opportunity to respond to the exhaustion argument included in Defendants' motion.

Plaintiff admits in his complaint that he did not exhaust his administrative remedies. (Compl. ¶ 19.) However, Plaintiff argues that Defendants "intentionally denied the administrative remedy process by refusing [to give him] complaint forms…[.]"(*Id*.) Plaintiff contends that Defendant Seafus, referring to the BP-8 forms, stated that "we have no money to buy the forms." (Compl. ¶ 20.) Defendants argue that Plaintiff's claims should be dismissed because he failed to exhaust available administrative remedies. (Document 21 at 8). In support, Defendants argue that there is not a futile exception to the requirement that Plaintiff must exhaust his administrative remedies before filing suit. (*Id*. at 4-5.) Defendants also maintain that Plaintiff must properly exhaust his administrative remedies in compliance with the BOP's procedural rules. (*Id*. at 5.) Finally, Defendants claim Plaintiff must completely exhaust his administrative remedies prior to filing suit. (*Id*.)

The BOP has a detailed administrative procedure for inmates seeking formal review of an issue or complaint concerning their confinement under 28 C.F.R. § 542.10, *et seq*. First, an inmate is required to attempt to resolve his or her issue informally with BOP staff. 28 C.F.R. § 542.13. If informal review is unsuccessful, an inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP–9), 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). If unsatisfied with the Warden's response, an inmate "may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If unsatisfied with the Regional Director's response, an inmate may "submit an Appeal on the appropriate form (BP–11) to the General Counsel within

30 calendar days of the date the Regional Director signed the response." *Id*. At this point, an inmate has exhausted his or her administrative remedies.

Defendants attach to their motion Plaintiff's administrative remedy history, wherein it reveals that Plaintiff has filed twelve administrative remedies during his time at FCI Beckley. (Document 20 Ex. 1). Defendants contend that Plaintiff did not file for any administrative remedies with respect to his current complaint prior to filing the instant suit. (Document 21 at 6-7). In a footnote, Defendants acknowledge that Plaintiff did file an administrative remedy complaint of an earlier lockdown in August of 2010, but argues that his current complaint deals with the lockdown which started in January of 2011. (*Id*. at n. 1.) Nevertheless, Defendants contend Plaintiff did not **exhaust** his administrative remedies for his complaint in August of 2010. *Id*. Defendants rely on the accuracy of Plaintiff's administrative record as provided by the affidavit of Sharon Wahl, a Paralegal for the Beckley Consolidated Legal Center. (Wahl Aff.) Ms. Wahl stated that "Plaintiff did file an administrative remedy complaint of an earlier 'lockdown' in August 2010, but the current 'lockdown' he complains about did not occur until January 2011." (Wahl Aff. ¶ 5.)

In his response, Plaintiff makes several arguments why his Complaint should not be dismissed for failing to exhaust administrative remedies. First, Plaintiff appears to argue that he did not need to exhaust administrative remedies because "this case is not about lumpy mattresses, or moldy bread in the cafeteria ('prison conditions'), but rather regarding severe constitutional deprivations of rights guaranteed by the United States Constitution and the Defendants' own policies." (Document 25 at 14). This argument is without merit. The Court finds "prison conditions" is specifically defined as "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government

13

officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2) (2006). Thus, the plain reading of 18 U.S.C. § 3626(g)(2) requires this Court to find that the allegations in Plaintiff's Complaint are precisely the type that involve the "effects of actions by government officials on the lives of persons confined in prison."

Second, Plaintiff argues that "failure to exhaust is an administrative defense which might have been presented in a responsive pleading, but Defendants chose to waive that right and defaulted." (Document 25 at 14). In light of the Court's ruling that Defendants did not default, this argument is without merit.

Third, Plaintiff argues that his complaint asserted that the "administrative remedy process was not available, and that fact has not been disproven or contested, stating an admission by the Defendants." (*Id.*) Defendants argued the administrative process was available and that Plaintiff did not exhaust. *See* (Document 21 at 4-9). However, Defendants do not address Plaintiff's contention that he was intentionally denied administrative remedy forms other than to state that "[t]he Magistrate Judge previously found that the administrative remedy process was available to Plaintiff, but that he has simply failed to utilize the proper procedures."[7] (Document 21 at 7). This reliance is misplaced. The Court dismissed Plaintiff's Complaint in *Woltz v. Berkebile*, 2010 WL 3813369, (S.D. W. Va. Sep. 27, 2010), but the Court did not directly reach the exhaustion issue because Plaintiff failed to state a constitutional claim. Defendants contend that "the administrative remedy process is available to inmates at the SPC, including Plaintiff, and Plaintiff's claims should be dismissed for his failure to exhaust those administrative remedies." (Document 21 at 7).

---

[7] *Woltz v. Berkebile*, 5:10-cv-1177, 2010 WL 3813403 *13 (S.D. W. Va. Aug. 4, 2010), adopted in part by *Woltz v. Berkebile*, 2010 WL 3813369 (S.D. W. Va. Sep. 27, 2010) (finding it was not necessary to decide the exhaustion argument because Plaintiff had failed to state a constitutional claim).

14

Plaintiff, in response, appears to argue that the fact of whether the process was available is contested, which prevents summary judgment or dismissal. (Document 25 at 14). In support of the unavailability of the administrative remedy process, Plaintiff attaches Exhibit C, which includes: (1) a letter to Clerk of Court, (2) his affidavit, (3) a memo to Defendant Seafus, (4) a letter to Congresswomen Virginia Foxx (R-NC), (5) an email to the acting warden, and (6) a letter to Regional Director C. Eichenlaub. In each of the above referenced documents, Plaintiff contends that the administrative process was unavailable to him because he was denied the necessary forms to begin the administrative process even when he specifically requested such document from prison staff. (Document 25 at 33). Plaintiff's affidavits and letters all discuss the unavailability of the administrative remedy process during November of 2010, with the exception of an email sent to the acting warden on August 15, 2010. Interestingly, Plaintiff filed an administrative remedy the following day on August 16, 2010. (Document 20-1 at 5). The Court notes that every source of proof that the administrative remedy process is unavailable is based on Plaintiff's own writings.

Finally, Plaintiff contends that this Court has already "accepted his evidence that the administrative remedy process was unavailable at FPC-Beckley" in *Woltz v. Scarantino, et al*. Civil Action No. 5:10-00095, 2011 WL 1229994, (S.D. W. Va. Mar. 31, 2011). Plaintiff's reliance is misplaced and inaccurate. In *Scarantino*, the Court dismissed Plaintiff's action at the §1915A screening stage for failure to state a claim upon which relief may be granted. The Court did not find that the administrative remedy process was unavailable to Plaintiff, rather it found that it was premature to dismiss the actions for failure to exhaust administrative remedies at the §1915A screening stage. *Woltz v. Scarantino, 2011 WL 1229994* at *6. The Court assumed Plaintiff exhausted his administrative remedies, but still dismissed Plaintiff's action for failure to

15

state a claim upon which relief can be granted. *Id*. at *7. However, the posture of this case is different. Unlike in *Scarantino,* Defendants, here, have filed a responsive pleading raising the affirmative defense of exhaustion. (Document 21 at 4-9).

As the Court noted above, the exhaustion of administrative remedies is an affirmative defense in which Defendants bear burden to plead and prove lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Court finds that Defendants met their burden by putting forth Plaintiff's history of filing administrative remedies, which revealed that Plaintiff had not exhausted any of the twelve administrative complaints that he filed. Viewing the facts most favorably to the Plaintiff, the Court finds that Plaintiff's Complaint only addresses the January 2011 "lockdown." The schedules, restrictions, memos and Plaintiff's affidavit that are attached to his Complaint are all based on the January 2011 "lockdown." Plaintiff contends the illegal lockdown period of his complaint was August 6, 2010, through February 12, 2011. (Document 25 at 7). However, a review of Plaintiff's Complaint reveals that only the January "lockdown" is addressed. Even if his Complaint addressed allegations from August 6, 2010, through February 12, 2011, Plaintiff clearly failed to exhaust his August 16, 2010, administrative complaint because no further action was taken. (Document 20-1 Ex. A). From the records, it appears that Plaintiff filed the complaint on August 16, 2010, wherein he contends that the lockdown was unjust and the BP-9 forms were unavailable. (*Id*.)

Plaintiff does not contest that he did not exhaust his administrative remedies, but rather that he did not need to because the process was unavailable. In support, Plaintiff puts forth several affidavits and letters stating the administrative remedies process was unavailable. However, the Court finds that his own self-serving affidavits and letters do not overcome the evidence put forth by Defendant that the administrative remedy process was available to him.

16

*See* (Document 20-1). The Court makes this finding taking into consideration that Plaintiff clearly has access to the administrative remedies process as evidenced by his numerous administrative filings, most of which were filed after the instant complaint.[8] However, most importantly, the Court makes this finding based on Plaintiff's own admission in his Complaint. Plaintiff alleges that Defendants "intentionally denied [him] the administrative remedy process by refusing [to give him] complaint forms… including the most basic duplicate form (known as a BP-8), which has been replaced by a single page photo copy, as attached as example (Exhibit F), so no record will be available of the complaint." (Compl. ¶ 19.) Under informal resolution, "[e]ach Warden shall establish procedures to allow for the informal resolution of inmate complaints." 28 C.F.R. 542.13. Plaintiff attached a photocopy of a blank form which apparently replaced the old form used to initiate the administrative remedy process. *See* (Compl. Ex. F.) Thus, it is clear Plaintiff had access to the administrative remedy process because he attached to his Complaint a form he could have used to begin the administrative process. *Id.* It is illogical for Plaintiff to attach a blank form which could have been used in the instant case, while maintaining he was unable to get access to the administrative remedy process. Further, the Court notes that this Plaintiff's Complaint was filed nine days after the beginning of the "lockdown." Plaintiff's distain for the administrative process does not make him immune from its requirements.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e (a). Accordingly, given the Court's consideration of parties' documents which are outside of the Complaint, Defendant is entitled to summary judgment and, consistent with the findings herein, dismissal of Plaintiff's Complaint.

---

[8] Plaintiff filed two administrative complaints on March 11, 2011; three administrative complaints on March 24, 2011; one administrative complaint on April 14, April 21, and April 28, 2011; and two administrative complaints on May 5, 2011. (Document 20-1 at 5-10.)

## IV.     CONCLUSION

WHEREFORE, the Court hereby **ORDERS** that *Plaintiff's Motion for Default to be Entered by Clerk Pursuant to Rule 55(a)* (Document 14), *Plaintiff's Motion for Reconsideration of Order Filed April 29, 2011* (Document 18) and *Plaintiff's Motion for Entry of Default Pursuant to Rule 55(a) against Defendants in their Official Capacities* (Document 19) be **DENIED**. The Court further **ORDERS** that *Defendants' Motion to Dismiss, or, in the alternative, Motion for Summary Judgment* (Document 20) be **GRANTED**, and that *Plaintiff's Complaint* (Document 1) be **DISMISSED**.  Additionally, the Court **ORDERS** that *Plaintiff's Motion to Stay* (Document 24) be **TERMINATED AS MOOT**. Finally, the Clerk is directed to **REMOVE** this matter from the Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     February 1, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA